UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Mathilda E. Sabal, minor children A.S.E., E.S.W., and E.W.J., | Civil No. 22-1732 (DWF/DTS) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Robbinsdale Police Department, City of Robbinsdale, and John Kaczmarek #3805, | |
| Defendants. | |

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss filed by Defendants Robbinsdale Police Department, City of Robbinsdale, and John Kaczmarek (Doc. No. 4) and a Motion for Default Judgement filed by Plaintiffs Mathilda Sabal ("Sabal") and minor children A.S.E., E.S.W., and E.W.J. (together, "Plaintiffs") (Doc. No. 13). For the reasons set forth below, the Court denies Plaintiffs' motion for default and grants Defendants' motion to dismiss.

## BACKGROUND

On the evening of July 7, 2020, Sabal left her mother's house in Minneapolis with her children to drive home. (Doc. No. 1 ("Compl.") ¶ 7.) Kaczmarek was on patrol in the City of Robbinsdale and observed Sabal run a stop sign while driving at roughly twenty miles per hour. A video recording from Kaczmarek's squad car captured the

incident. (Doc. No. 9 ("Kaczmarek Decl.") ¶ 2, Ex. 1 ("Squad Video") at 22:35:39.)[1] Kaczmarek pursued Sabal with his emergency lights flashing. (Compl. ¶ 7; Squad Video at 22:35:39.) While Kaczmarek was in pursuit, Sabal continued to drive through a second stop sign without yielding. (Compl. ¶ 7; Squad Video at 22:35:47.) Kaczmarek turned on his siren. (Squad Video at 22:35:59.) Sabal continued to drive, increased her speed, and passed under a streetlight. (*Id.*) Sabal continued to drive, passing through three lit controlled intersections and a separate streetlight. (*Id.* at 22:36:18-48.) Sabal ultimately stopped at the intersection of 36th Avenue North and County Road 81. (*Id.* at 22:37:21.) Sabal put her hands out of the open car window. (Compl. ¶ 7; Squad Video at 22:37:22.) Kaczmarek drew his firearm as he exited his vehicle, approached the car and stood behind the driver's side door, and yelled "keep your hands in the air!" and "turn the vehicle off!" (Compl. ¶ 7; BWC at 22:37:22.) Sabal complied. (Compl. ¶ 7; BWC at 22:37:34.) Another officer arrived and Sabal exited the vehicle and walked backwards with her hands up. (BWC at 22:38:06.) Kaczmarek lowered his firearm at some point before another officer placed Sabal in handcuffs. (*Id.* at 22:38:15.) In total, Kaczmarek held up his firearm for approximately 45 seconds. Neither Kaczmarek nor any other officer continued to point a firearm at Sabal. (*Id.*) Sabal told the officers that

---

[1] The Court properly considers documents that are necessarily embraced by the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). This includes the recorded videos of the event and public records related to Sabal's arrest: Squad Video, Kaczmarek Body Worn Camera Video (Kaczmarek Decl. ¶ 3, Ex. 2 ("BWC Video")), E-Summons and Complaint (in *State v. Sabal*, 27-CR-20-16353 (Dist. Ct. Minn. Jul. 24, 2020) (Doc. No. 10 ("Kelly Decl.") ¶, 3, Ex. 3)), and the Certificate of Conviction, 27-CR-20-16353 (Dist. Ct. Minn. Jul. 24, 2020) (*id.*, ¶ 4, Ex. 4).

children were in her vehicle. (*Id*.) At that point, Sabal was escorted to the rear of the scene and officers tended to her children. (*Id*. at 22:38:25.) Sabal told the officers that it was dark and she wanted to pull over on a busy street. (*Id*. at 22:40:00.)[2] After conferring with the other officers, Kaczmarek concluded that he had probable cause to believe that Sabal had committed a felony fleeing in a motor vehicle. (*Id*. at 22:43:22-22:44:02.) Officers transported Sabal to the Robbinsdale Police Department for booking.

Sabal was charged with misdemeanor careless driving, misdemeanor failure to yield to an emergency vehicle, and misdemeanor failure to yield to traffic control device. She was convicted of two petty misdemeanors.

On July 7, 2020, Plaintiffs filed the present *pro se* lawsuit. Plaintiffs allege claims under 42 U.S.C. § 1983 for "excessive force" and "police misconduct." In summary, Plaintiffs allege that the Kaczmarek racially profiled Sabal, used excessive force when he drew his weapon "at [her] head", and that the Robbinsdale Police Department falsely arrested Sabal. Plaintiffs allege that they suffered emotional distress by being pursued by the police. (*See generally* Compl.) Defendants move to dismiss Plaintiffs' Complaint for failure to state a claim. In lieu of an opposition, Plaintiffs filed a separate, self-styled "motion for default judgment." The Court considers both below.

---

[2]   Sabal also alleges that she told her children that she was not going to pull over until she was in a well-lit area. (Compl. ¶ 7.)

3

## DISCUSSION

**I.     Motion for Default**

Plaintiffs move for a default judgment against Defendants, arguing that they failed to respond in a timely manner to the Complaint. Specifically, Plaintiffs assert that they were not properly served with the "responses" from Defendants. Defendants oppose the motion.

The record shows that Plaintiffs filed this lawsuit on July 7, 2022. (Doc. No. 1.) The record does not indicate that Plaintiffs properly served the initial pleading on Defendants as the Summons contains blank pages for Proof of Service. (*See* Doc. No. 2.) Despite the apparent lack of proper service, on August 4, 2022, Defendants sent Sabal a letter addressed to her last known address[3] asking her to voluntarily dismiss her claims in accordance with Local Rule 7.1. (Doc. No. 16 ("Kelly Decl. II") ¶ 3, Ex. 1.) On August 8, 2022, Defendants filed their motion to dismiss and served a copy on Plaintiffs at Sabal's last known address. (*Id.*) Neither the letter nor the copy of the motion to dismiss were returned as undeliverable. (*Id.* ¶ 4.) Defendants re-served a copy of the motion to dismiss on August 17, 2022. (*Id.* ¶ 5; Doc. No. 14.)

Based on the record before it, the Court finds that Plaintiffs' motion for a default judgment lacks merit. First, there is no evidence that Plaintiffs properly served Defendants after filing this lawsuit on July 7, 2022. As noted above, Plaintiffs filed the Summons on ECF, but the pages dedicated to documenting Proof of Service are blank.

---

[3]     The address Defendants used is the same address that Sabal listed in her request for Default Judgment. (Doc. Nos. 12, 13.)

4

(Doc. No. 2.) Despite not being properly served, Defendants responded to the Complaint by filing and serving the pending Motion to Dismiss on August 8, 2022. (Doc. No. 12; Fed. R. Civ. Pro. 5(b)(2)(C) (providing that service is proper by mailing papers to the person's last known address, "in which event service is complete upon mailing").) For this reason, the Court denies Plaintiffs' Motion for Default.

**II.     Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not

5

pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### A.  Robbinsdale Police Department

Defendants argue that Robbinsdale Police Department, as a city agency, is not a proper legal entity subject to suit. The Court agrees. While a municipal corporation, such as a city, has authority to sue and be sued, municipal departments have not been given that authority and are not legal entities subject to suit. *See Hyatt v. Anoka Police Dep't.*, 700 N.W.2d 502, 506 (Minn. Ct. App. 2005) ("[T]he police department is not a legal entity subject to suit."). For this reason, Robbinsdale Police Department is properly dismissed as a defendant.

### B.  Claims Based on Individual Capacity

To sue a public official in their individual capacity, a plaintiff must do so expressly and unambiguously in the pleadings. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Plaintiffs have not expressly and unambiguously pleaded claims against Kaczmarek, and therefore it is proper for the Court to construe the claims against Kaczmarek as official capacity claims. *Id*. Thus, the claims against Kaczmarek are equivalent to a suit against the City of Robbinsdale. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (presuming an individual defendant not named in his individual capacity is sued only in his official capacity; explaining that a suit against a government officer in their official capacity is equivalent to a suit against

the employing governmental entity); *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018 (same).[4]

### C. Qualified Immunity

The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986).

To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts alleged in the complaint demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

#### 1. Fourth Amendment

Plaintiff argues Kaczmarek used excessive force by drawing his firearm during her arrest. (Compl. ¶ 7.) In analyzing an excessive force claim brought under § 1983, the Court first identifies the specific constitutional right allegedly infringed by the challenged application of force. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Here, Plaintiff's

---

[4] The Court notes that for the reasons stated below, any claim against Kaczmarek in his individual capacity would fail on qualified immunity grounds.

claim that Kaczmarek used excessive force in the course of making an arrest is analyzed under the Fourth Amendment's "objective reasonableness" standard. *Id.* Under the Fourth Amendment, the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect coercion. *Id.* at 396. The test of reasonableness under the Fourth Amendment requires careful consideration of the facts and circumstance of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id.*; *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Plaintiffs' excessive force claim requires a showing that Kaczmarek's conduct was objectively unreasonable "under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). Here, the record does not support a finding that Kaczmarek's actions were objectively unreasonable. After Sabel stopped her car and when Kaczmarek initially approached, he drew his gun and kept it drawn for roughly 43 seconds. Kaczmarek instructed Sabel to keep her hands in the air and turn off her vehicle and she complied. The record also shows that when a second officer arrived, Sabel walked backwards with her hands up. Again, she complied and the second officer handcuffed her. By this point, Kaczmarek had lowered his gun. When Sabel told the officers that there were children in the car, she was moved to the rear of the scene and officers tended to the children. While there are circumstances under which an officer drawing a gun can give rise to an excessive force claim, those circumstances differ from

the case at hand. *See, e.g.*, *Wilson v. Lamp*, 142 F. Supp. 3d 793, 806, 807 (N.D. Iowa 2015) (noting that plaintiffs adequately stated a federal claim for excessive force where officers kept a gun trained on a child in a car after determining that plaintiffs were not the suspect they were seeking and after plaintiffs complied with officers' requests).

The Court concludes that the facts alleged by Plaintiffs, accepted as true, do not plausibly show that Kaczmarek used excessive force in violation of Plaintiffs' Fourth Amendment rights.

### 2. Racial Profiling

Sabel also claims that she was racially profiled. (Compl. ¶ 7.) Specifically, Plaintiff alleges "I was racially profiled, he thought I was my brother." (*Id.*) Aside from this naked assertion of racial profiling, there are no facts alleged suggesting that Kaczmarek knew Sabel's race when he initiated his pursuit. In addition, the record shows Sabel's car running through a stop sign, making Kaczmarek's belief that she violated a traffic law reasonable. The Court concludes that the facts alleged by Plaintiffs, accepted as true, do not plausibly show that Sabel was racially profiled in violation of the Fourth Amendment. This claim is properly dismissed.

### 3. False Arrest

Sabel also asserts a false arrest claim. In support, Sabel asserts that she was falsely arrested "by going to Robbinsdale police department and then was housed at the [H]ennepin County jail but the one with the clock" and that she was "terrified thinking I was going to prison over a parking ticket." (Compl. ¶ 7.) Notably, Sabel does not dispute that she failed to stop at a stop sign or that she failed to immediately pull over

9

after she noticed the police officer following her with his lights and siren on. Instead, Sabel objects to the fact that instead of receiving a citation, she was "humiliated by being arrested in front of my children." *Id*.

The Fourth Amendment prohibits unreasonable seizures. *Graham*, 490 U.S. at 394-95. A warrantless arrest, unsupported by probable cause, violates the Fourth Amendment. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014) (quotation omitted). But a police officer need only have "arguable probable cause" to make the arrest in order to receive qualified immunity. *Id*. (citing *Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012).) "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Id*. (quotation omitted).

In Minnesota, officers may execute a warrantless arrest when a public offense has been committed in the officer's presence and when a felony has in fact been committed, and the officer has reasonable cause to believe the person arrested committed the crime. Minn. Stat. § 629.34, subd. 1(c)(1) and (3). Further, in Minnesota, it is a felony when "[w]hoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer . . ." Minn. Stat. § 609.487, subd. 3. The statutory definition of "flee" includes increasing speed, refusing to stop the vehicle, or

10

"us[ing] other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle." *Id.*, subd. 1.

Defendants argue that Kaczmarek is entitled to qualified immunity on this claim because he had arguable probable cause to arrest Sabel. The Court agrees. Sabel does not dispute that she refused to pull over despite the fact that Kaczmarek was following her with his emergency lights and siren activated. Kaczmarek's Squad Video confirms that after he activated his lights, Sabel continued to drive through two stop signs and increased her speed as he pursued her for almost two minutes for several blocks, including through well-lit and controlled intersections.

Based on these facts, a reasonable officer could have concluded that probable cause existed to arrest Sabel. Because arguable probable cause existed, Kaczmarek is entitled to qualified immunity and Sabel's false arrest claim is properly dismissed.

The Court concludes that the facts alleged by Plaintiffs, accepted as true, do not plausibly show that Kaczmarek falsely arrested Sabel in violation of her Fourth Amendment rights.

### 4. First Amendment

Plaintiffs also assert that Sabel's First Amendment rights were violated. "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) [s]he engaged in a protected activity, (2) the government official took adverse action against h[er] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the

11

protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted); *see also Just v. City of St. Louis, MO*, 7 F.4th 761, 768 (8th Cir. 2021).

Here, Plaintiffs do not allege any facts to show that Sabel was arrested in retaliation for a protected speech activity. In addition, as discussed above, Kaczmarek had arguable probable cause to arrest her and the record does not indicate that Sabel had engaged in any protected activity for which she was retaliated against. For these reasons, this claim is properly dismissed.

### III.   Claims Against the City of Robbinsdale

Plaintiffs allege official capacity claims against the City of Robbinsdale. However, it is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id*. at 694. Plaintiffs do not allege any facts demonstrating a relevant policy, custom, or failure to train. And even if they had, the lack of an underlying substantive claim against Kaczmarek forecloses a claim against the City of Robbinsdale. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Without a constitutional violation, there can be no claim against the City of Robbinsdale. *See Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007).

### IV. Intentional Infliction of Emotional Distress

Construing Plaintiffs' Complaint liberally, it appears that Sabel asserts a claim for intentional infliction of emotional distress on behalf of herself and her children. Plaintiffs, again, do not support this claim with specific allegations. To succeed on a claim of intentional infliction of emotional distress, a plaintiff must establish that the defendant engaged in conduct that is extreme and outrageous, that the conduct was intentional or reckless, and that the conduct caused severe emotional distress. *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995). The conduct giving rise to such a claim must be "so atrocious that it passes boundaries of decency and it utterly intolerable to the civilized community." *Odegard v. Finne*, 500 N.W.2d 140, 144 (Minn. Ct. App. 1993) (citation omitted).

The Court grants Defendants' motion to dismiss this claim. Nothing in the Complaint (or the video recordings of the incident) suggest conduct that is "extreme or outrageous."

### V. Dismissal with Prejudice

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated in *Iqbal* and *Twombly*. Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading requirement does not require detailed factual allegations, but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Rule 8

13

demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks and citations omitted).  In addition, *pro se* complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Nevertheless, the Court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed.  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (stating a *pro se* complaint must allege facts sufficient to support the claims advanced); *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981) ("[P]leadings brought pro se [ ] are to be liberally construed . . . . But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts.") (citations omitted).

Here, Plaintiffs' Complaint contains no allegations supporting the causes of action alleged.  Moreover, the video evidence underscores the fact that there is no basis for Plaintiffs to recover against Defendants.  Thus, Plaintiffs' claims are properly dismissed with prejudice.  *See, e.g.*, *Machen v. Iverson*, Civ. No. 11-1557, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012), *report and recommendation adopted*, Civ. No. 11-1557, 2012 WL 567128 (D. Minn. Feb. 21, 2012) ("[W]hen a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.").

## CONCLUSION

For the reasons set forth above, the Court dismisses Plaintiffs' claims with prejudice.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (Doc. No. [4]) is **GRANTED**.

2. Plaintiffs' Motion for Default (Doc. No. [13]) is **DENIED**.

3. Plaintiffs' claims against Defendants (Doc. No. [1]) are **DISMISSED WITH PREJUDICE**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  February 16, 2023          s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge